Brown, District Judge.
The above actions grew out of a collision which took place at about 2 a. m. of May 8, 1892, in Vineyard sound, between barge No. 55, in tow of the steam tug F. H. Wise, and the schooner Minnie C. Taylor, by which the schooner was seriously damaged. After the collision the schooner was towed by the tug into Vineyard haven. The owners of the tug, claiming that the collision was caused solely by the fault of the schooner, filed the libel first above named for salvage compensation for their aid to the schooner after collision. The cross libel was filed to recover damages to the schooner, on the contention that the collision was caused solely by the fault of the >tug. If the latter contention is correct, the libel for salvage cannot be sustained.
The place of collision was in the channel way between Squash meadow and Hedge fence, a passage less than three fourths of a mile in width, as bounded by the range of the red light from Nobska point on the *324 north,- and by the red range of the West Chop light on the south. The tug was bound east, going along the northerly side of- the channel way near the red range of the Nob ska point light, and heading about southeast by east. She had in tow barge No. 55 astern on a hawser of 125 fathoms, and another barge astern of the latter upon a hawser of from 80 to 100 fathoms. The schooner Taylor was bound from St. Johns to New York, with a cargo of lumber. The wind was north northwest, and a good sailing breeze.. The schooner was 108 feet long, with three masts and three jibs. All her lower sails were set, and both she and the tug were making about four knots an hour. Not long before the collision the schooner had coiné about from her starboard tack, close hauled, and heading about northeast by east; that is, at right angles with the course of the tug and tow. The night was clear, with moonlight; and the schooner and her course were recognized by the pilot of the Wise, by her sails, at a sufficient distance without distinguishing her lights.
There is some confusion in the testimony as to the position of the vessels when seen by each other. I have no doubt, however, that the schooner was seen when at least a quarter of a mile distant from the line of the tug and tow, at which time, computing backwards from the collision, the plotting of the navigation will show that the schooner must have borne about two and one half points forward of the tug’s beam. At the same time another schooner, bound eastward, with the wind free, was going between the line of the tug and the schooner, parallel with the tug, and about one third faster than the latter, as I find by computation from the evidence of the tug’s witnesses. When the Taylor was first seen, the other schooner 'had already passed, or was passing, barge No. 55, and was drawing up towards the tug on a course distant from her, according to the estimates of the different witnesses, from 200 to 600 feet.
By the ordinary rule of navigation it was the -duty of the tug and tow, and of the other schooner, which had the wind free, to keep out of the way of the Taylor. The mate of the Taylor, who was in charge of her navigation, testifies that he expected both of them to turn to starboard and go under his stern. But the other schooner was at a sufficient distance, and had sufficient speed, to keep out of the way of the Taylor by going ahead of her, and did so; and the tug and tow, so long as the parallel schooner kept on her course, could not turn to starboard, since that would involve collision with the latter. The Taylor, on the other hand, was bound, as respects the other schooner, to hold her course until the risk of collision with the latter was over; and it is contended that when that risk was past, she was too near the line of the tug and .tow to tack without coming into collision with the barge. She accordingly kept her course as above stated, without change, and as the evidence shows, ran within 75 feet of the barge till she brought up against the hawser; and her speed, being checked thereby, the barge came up and struck the schooner at her main chains about 60 feet from her stem.
*325 The above circumstances constitute, it is evident, a case of peculiar circumstances. But these circumstances were palpable and open to the observation of both vessels alike. Either, by the use of reasonable endeavors, might, as it seems to me, easily have avoided this collision, and both, therefore, are in fault.
1. The schooner ought, under the circumstances, to have tacked and come about when the determination of the other schooner to go ahead of her was perfectly assured, if there was room for her to do so; and that there was room I have not the least doubt. The design and course of the other schooner were, as I find, perfectly evident when the Taylor was at least 800 feet from the line of the tug and tow. That allowed an ample space for the schooner to come about and avoid collision.
That the Taylor had this room is easily deducible from the evidence.
The concurrent testimony, both of the tug and of the schooner, shows that the other schooner must have been from 400 to 500 feet to southward of the tug. The mate estimated the distance at 500 or 600 feet; the master and the officers of the Wise, at half that distance. But the facts of the navigation furnish the best evidence. For the Taylor was just coming up under the stern of the other schooner when the master and pilot of the Wise saw that she was not going to tack, and, therefore, starboarded and slowed. At this time the other schooner was just lapping the stern of the Wise, which then bore a little on the Taylor’s starboard bow. When the master of the Taylor came on deck, he says he was right astern of the other schooner, about half way across her and from one to two lengths distant. The line of the Taylor’s course, therefore, at the time when her bow had come up even with the stern of the other schooner, say 100 feet distant, was about 200 feet astern of the tug, which agrees with the master’s estimate. As the Taylor went within less than 100 feet of barge 55, which was 750 feet astern of the Wise, it follows that the barge moved from 400 to 500 feet, while the Taylor was passing from the line of the other schooner to that of the tug and tow; and as the Taylor was going at least as fast as the barge, the other-schooner must have been at least 400 or 500 feet from the line of the tug and tow. But the intention of the other schooner to cross ahead of the Taylor must have been perfectly evident'to the Taylor from the time when she had come within 300 feet of the line of the Taylor’s course, showing no change. Assuming that the other schooner was of the same size as the Taylor, that is, 165 feet over all, she must therefore, have traveled about 570 feet from that time till the bow of the Taylor was astern of her; and the Taylor must have sailed in the same interval about 400 feet. Adding this to the distance of the other schooner from the line of the tow, it follows that the Taylor was free to tack, if she chose, when from 800 to 900 feet distant from the line of the tow, and more than 1,200 feet distant diagonally from the barge. If, to make assurance doubly sure, the Taylor had waited until the other schooner was within 100 feet of the line of her course, the Taylor would have been about 300 feet to the southward of the schooner, i. e., from 700 to 800 feet to the southward of the tug and tow.
*326 In that situation it was the duty of the Taylor to tack, because there was ample room for her to do so. The tug was right ahead of her, and there was no other probable way of avoiding collision, except by taking the chance of running over the hawser, an experiment which a sailing vessel should not resort to on her own responsibility except in extremis. The tug had given no signal suggesting to cross the hawser; nor had she stopped; and stopping was a necessary precaution if the schooner was to cross. The tug had been expecting the schooner would tack, because she could do so and was near the northerly line of the channel. The schooner’s continuance on her course was, therefore, a deliberate and unnecessary running into danger, in the face of evident peril, when she had abundant means of avoiding it by tacking. A radius of 700 feet is much more space than is necessary for a schooner only 108 feet long to tack in. Otherwise there would be little beating in the East river. The mate testified she wanted “three or four lengths,”—“500 or 600 feet.” Three lengths would be but 324 feet. When the master came on deck he asked the mate why he had not tacked, i. e., before; and the latter replied, “on account of the schooner.” But it is noticeable that even then, when the available distance for tacking had been diminished by almost one half, the mate asked the captain if he should put the wheel down. This would indicate that the mate thought tacking was possible even then, as the master and pilot of .the Wise testify it was. The captain ordered him to keep his course.
The mate’s knowledge of the rules as to the meaning of a tow’s lights was defective; and I doubt whether he recognized, as he ought to have recognized, that the barge was in tow of the Wise, until the other schooner had passed the Taylor; and it was then that he first called the master. Even at that time had the wheel been put hard astarboard, the Taylor must have gone astern of the barge; and if she did not wholly clear, the most that could have resulted would have been, I think, a harmless sagging of the schooner upon the hawser between the two barges. He had no right to run blindly upon a dangerous course, when a safe tack was easy.
It is evident, however, that the master expected to run over the forward hawser, and took his chances of clearing it rather than tack at that time. He, no doubt, miscalculated entirely as to what part of the hawser he would cross. Had he crossed it near the middle, where he says he went, he would, no doubt, have cleared it. But instead of going midway, as he might have done by porting his helm, he went so near the barge as to encounter the hawser.
The channel in which these vessels were moving resembled a river more than the open sea. The tug and tow were proceeding, in effect, near the bank, represented here by the red range of the Nobska point light; and there was no real occasion for the schooner to cross that line. In the ordinary course of navigation she would have speedily tacked. In such a situation it was but reasonable in the tug to assume that the Taylor would tack as soon as she was free to do so, just as in proceeding near the river bank a tug thus incumbered by a long tow, would not *327 expect a schooner to insist on crossing her course merely to run a length or two nearer the river shore.
2. In the circumstances of this case I do not think it was reasonably incumbent on the pilot of the tug to stop and allow the boats to huddle together, simply to give the schooner a chance to cross his course if she should choose to do so, instead of tacking at about the place where she would naturally be expected to tack, provided the tug took care to give the schooner the chance to cross a perfectly slack hawser, if she insisted on crossing his line. The tug had the right, I think, to perform her duty of keeping out of the way by either stopping early enough to let the schooner go ahead, or by stopping later, in season to give a safe course across a slack hawser. I think the tug could have stopped in time to allow the schooner to go ahead of the tug, if she wished. But without passing upon the question of her duty to do so under such circumstances, I think the tug must be held to blame for not stopping sooner, or casting off her hawser, when the actual intention and course of the Taylor not to tack were perceived, in order that the manifest danger from the hawser might be avoided by letting it all drop to the bottom. The schooner’s intention to cross the hawser instead of tacking was evident in abundant time either to slacken it thoroughly, or to cast off. The evidence of the tug is, that she did stop her engine before collision so as to slacken the hawser to some extent. But the evidence of the pilot shows that the Taylor was then very near the hawser. A small interval after stopping would have been enough to allow the barge to run up so that the hawser would have dropped nearly perpendicularly from her stem, instead of running out ahead considerably as it evidently did. The greatest depth of water there was only from 10 to 14 fathoms, so that a short stop would have brought the whole hawser down to the bottom.
In the case of The Galileo, 28 Bed. Rep. 469, the tug was held in fault, on appeal, in the circuit court, for not having stopped sooner and cast off the hawser of the tow, although the tug had the right of way, and the other steamer, (which was in the situation of barge 55,) had given her a signal assuring the tug that she would keep out of the way. Tn this respect I cannot distinguish the present case from that of The Galileo, except that in the present case the duty of the tug was much plainer and stronger, because the primary duty to keep out of the way was upon the tug, and the schooner had given no assurance that she would keep out of the way, and was evidently proceeding to cross the hawser.
Both vessels being, therefore, in fault, the libel for salvage is dismissed; and the owners of the schooner are entitled to recover one half their damages, which, if not agreed upon, may be determined by a reference.